IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:15-CV-00605-RLV

| ROBIN PORTER, | ) |  |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **ORDER** |
| NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY,[1] | ) | |
| Defendant. | ) | |

**THIS MATTER IS BEFORE THE COURT** on cross-motions for summary judgment. (Docs. 13, 18). For the reasons that follow, the Plaintiff's Motion for Summary Judgment (Doc. 13) is **DENIED**, the Defendant's Motion for Summary Judgment (Doc. 18) is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

**I.     BACKGROUND**

In May 2014, Plaintiff Robin Porter protectively filed a Title II application for disability insurance benefits, alleging a disability onset date of June 16, 2013. (Tr. 11; Tr. 184-87). The Commissioner of Social Security ("Commissioner" or "Defendant") initially denied Plaintiff's application in August 2014 and, upon reconsideration, again denied the application in November 2014. (Tr. 11; Tr. 70-78, 80-92). Plaintiff requested a hearing before an administrative law judge. (Tr. 124-25). On July 9, 2015, Plaintiff appeared before Administrative Law Judge Todd D. Jacobson ("ALJ Jacobson") for her hearing. (Tr. 37-67).

---

[1] Nancy A. Berryhill became Acting Commissioner of Social Security on January 23, 2017. The Clerk is directed to substitute Nancy A. Berryhill for Carolyn W. Colvin as the Defendant in this matter. *See* Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

Following Plaintiff's hearing, ALJ Jacobson issued a decision concluding that Plaintiff was "not disabled" within the meaning of the Social Security Act for purposes of receiving Title II benefits. (Tr. 11-29). At Step One, ALJ Jacobson found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. (Tr. 13). At Step Two, ALJ Jacobson concluded that Plaintiff's lumbar spine compression fracture at L2, right fifth metacarpal base intraarticular fracture, left knee anterior cruciate ligament tear (status post repair), and obesity qualified as severe impairments but that Plaintiff's headaches, diverticulitis, anxiety, and depressive disorders only imposed mild limitations on her daily activities and did not qualify as severe impairments. (Tr. 13-17). In lieu of a Step Three analysis, ALJ Jacobson noted that Plaintiff conceded that none of her impairments, or a combination of her impairments, equaled a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 17). After discussing Plaintiff's medical records, the opinions of the examining and non-examining consultative doctors, and the third-party function report completed by Plaintiff's mother, ALJ Jacobson concluded that Plaintiff had a residual functional capacity permitting her to perform light work with a sit/stand option every thirty minutes and restrictions for frequent handling and fingering in the right upper extremity, occasional climbing, balancing, stooping, crouching, kneeling, and crawling, and no concentrated exposure to moving machines and unprotected heights. (Tr. 17-27). ALJ Jacobson then discussed Plaintiff's past work experience, relying on testimony from a vocational expert to classify Plaintiff's past employment as that of a meter reader, DICOT 209.567-010, and that of a meter repairer, DICOT 710.281-034, and to conclude that Plaintiff could not return to either of her prior positions. (Tr. 27, *see also* Tr. 56). At Step Five, however, ALJ Jacobson, again with the assistance of a vocational expert, determined that Plaintiff was not disabled because her residual functional capacity and transferable job skills were sufficient to allow her to gain employment as

a bench assembler, DICOT 706.684-022, nut and bolt assembler, DICOT 929.587-010, or office helper, DICOT 239.567-010.  (Tr. 27-28).

The Appeals Council denied Plaintiff's request for review of ALJ Jacobson's decision, rendering the Commissioner's unfavorable determination of benefits final.  (Tr. 1-3, 7).  Plaintiff timely commenced this action seeking judicial review of the Commissioner's denial of benefits and the parties have filed their cross motions for summary judgment.  (*See* Docs. 1, 13, 18). Through her memorandum in support of her motion for summary judgment, Plaintiff raises two related assignments of error stemming from ALJ Jacobson's assessment of the limitations placed on Plaintiff as a result of her left anterior cruciate ligament injury: (1) ALJ Jacobson's residual functional capacity assessment is not supported by substantial evidence because ALJ Jacobson failed to account for Plaintiff's testimony that she relies on a cane when standing and ambulating; and (2) ALJ Jacobson erred at Step Five because Plaintiff's use of a cane prevents her from doing "light work" or performing the duties of a bench assembler, nut and bolt assembler, or office helper.  (Doc. 14 at 3-6).  In response, the Commissioner argues that ALJ Jacobson properly accounted for Plaintiff's left anterior cruciate ligament injury through his inclusion of a sit/stand option in the residual functional capacity and that ALJ Jacobson's discussion of Plaintiff's medical records and Plaintiff's mother's third-party function report provides substantial evidence for his determination.  (Doc. 19 at 4-7).

## II. DISCUSSION

### A. Standard of Review

Pursuant to the Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), this Court's review of a final decision of the Commissioner is limited to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and

(2) whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Thus, if this Court finds that the Commissioner applied the correct legal standards and that his decision is supported by substantial evidence, the Commissioner's determination may not be overturned.

While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a scintilla and it must do more than create a suspicion of the existence of a fact to be established." *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (brackets and internal quotation marks omitted). Critically, "[t]he substantial evidence standard 'presupposes a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x 264, 266 (4th Cir. 2015) (ellipsis omitted) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). Consequently, as long as the judgment is explained and supported by substantial evidence, this Court must accept the Commissioner's decision, even if this Court would reach an opposite conclusion or weigh the evidence differently if it were conducting a *de novo* review of the record. *See Hays*, 907 F.2d at 1456. Therefore, the issue before this Court is not whether Porter *is* disabled, but whether ALJ Jacobson's conclusion that Porter is *not* disabled is

explained and supported by substantial evidence and that such decision was reached *based upon a correct application of the relevant law*.

B. Plaintiff's Alleged Use of a Cane

Plaintiff argues that ALJ Jacobson did not take Plaintiff's testimony about using a cane into account when conducting his residual functional capacity assessment and concluding that a sit/stand option, rather than a limitation for the use of a cane, appropriately accounted for her impairment relative to her left anterior cruciate ligament injury. (Doc. 14 at 3-5). Before determining at Step Four whether a claimant can perform her past relevant work, the administrative law judge must conduct a residual functional capacity assessment. *Mascio*, 780 F.3d 632, 635 (4th Cir. 2015). Residual functional capacity is defined as "'an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities.'" *Id.* at 639 (quoting Social Security Ruling ("SSR") 96-8p, 61 Fed. Reg. 34,474, 34,475 (July 2, 1996)) (emphasis omitted). In assessing a claimant's residual functional capacity, an administrative law judge "'must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Id.* at 636 (quoting SSR 96-8p, 61 Fed. Reg. at 34,475). Furthermore, an administrative law judge's "residual functional capacity 'assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Id.* (quoting SSR 96-8p, 61 Fed. Reg. at 34,478). Finally, the administrative law judge's "residual functional capacity 'assessment must be based on *all* of the relevant evidence in the case record' . . . includ[ing] 'effects of symptoms .

. . that are reasonably attributed to a medically determinable impairment.'" *Id.* at 639 (quoting SSR 96-8p, 61 Fed. Reg. at 34,477) (emphasis in original).

At her hearing, Plaintiff testified that, as a result of back pain and knee pain, she experiences difficulty walking very far and tries to "stay close to stuff" when walking. (Tr. 46-48). Plaintiff relayed that, in November 2014, she fell down some patio steps, reinjuring the anterior cruciate ligament in her left knee. (Tr. 48-49). Plaintiff further testified that, since her fall in November 2014, she is unable to go grocery shopping on her own and that she requires the assistance of a cane when walking. (Tr. 49-51).

Contrary to Plaintiff's suggestion, ALJ Jacobson noted each of the limitations Plaintiff alleged in her testimony. (*See* Tr. 18 (noting that Plaintiff testified that "[s]he does not grocery shop for herself"); Tr. 19 (noting Plaintiff's allegation that "she has to have someone with her holding her in order for her to walk or she will fall" and that "[s]he uses her cane to get around the house")). ALJ Jacobson, however, concluded that Plaintiff's "testimony as to the specific intensity, persistence, and limiting effects of her pain and other subjective symptoms is not persuasive in view of her daily activities and the inconsistencies in the record."[2] (Tr. 18). ALJ Jacobson relied on his review of Plaintiff's medical records when determining that a sit/stand option in Plaintiff's residual functional capacity, rather than a restriction for the use of a cane, accounted for mobility and stability limitations resulting from Plaintiff's left anterior cruciate ligament injury. ALJ Jacobson noted that Plaintiff visited several doctors after her fall in November 2014 and that none of the doctors' treatment plans included a recommendation that she use a cane or other ambulatory assistive device. (Tr. 24; *see also* Tr. 502-03, 508) In fact, Plaintiff's doctors did not even prescribe a knee brace for Plaintiff's alleged post-fall, knee

---

[2] Notably, Plaintiff does not directly raise an assignment of error regarding ALJ Jacobsen's credibility determination. (*See* Doc. 14).

instability. (Tr. 24; *see also* Tr. 502-03, 507-08). Furthermore, ALJ Jacobson noted that doctors did not find Plaintiff's knee instability and walking limitations so severe as to authorize Plaintiff to obtain a handicap decal. (Tr. 24; *see also* Tr. 508). Finally, ALJ Jacobson supported his decision not to include a further restriction for Plaintiff's alleged mobility and stability issues through citation to affirmative evidence in Plaintiff's medical records, including that, in December 2014, Plaintiff had good and equal strength throughout both legs and her patellae reflexes were intact. (Tr. 24; *see also* Tr. 504). ALJ Jacobson's reliance on Plaintiff's medical records and his observations of Plaintiff's testimony at the hearing, provide substantial evidence for his determination that a sit/stand option in Plaintiff's residual functional capacity, rather than a restriction for the use of a cane, adequately addressed mobility and stability limitations resulting from Plaintiff's left anterior cruciate ligament injury.[3]

Where substantial evidence supports ALJ Jacobson's decision not to include a restriction for the use of a cane in Plaintiff's residual functional capacity, Plaintiff's second assignment of error is also without merit. Put simply, because substantial evidence supports ALJ Jacobson's conclusion that the record did not support Plaintiff's alleged need to use a cane, Plaintiff's representative's questions to the vocational expert about the ability of an individual to perform the jobs of bench assembler, nut and bolt assembler, and office helper while using a cane are irrelevant

---

[3] When assessing Plaintiff's credibility and residual functional capacity, ALJ Jacobson also relied on a third-party function report completed by Plaintiff's mother. (Tr. 25). Although neither party questions ALJ Jacobson's reliance on this third-party function report, Plaintiff's mother completed the report on October 2, 2014, before Plaintiff's fall in November 2014. (Tr. 231, 238). Thus, while the report may discredit aspects of Plaintiff's testimony regarding her functional limitations prior to November 2014, it does not provide substantial evidence as to Plaintiff's need to use a cane after she reinjured her left knee in November 2014. Any error by ALJ Jacobson in relying on the third-party function report relative to Plaintiff's need for a cane following her fall in November, however, constitutes harmless error because ALJ Jacobson's discussion of the medial records provides substantial evidence for his conclusion on this matter. *See Carmickle v. Comm'r Soc. Sec. Admin*, 533 F.3d 1155, 1162 (9th Cir. 2008) (holding that an error in assessing credibility is harmless "so long as there remains substantial evidence supporting the ALJ's conclusions on credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion" (internal quotation marks and brackets omitted)).

to this Court's review of ALJ Jacobson's Step Five analysis. *See Kearse v. Massanari*, 73 F. App'x 601, 604 (4th Cir. 2003) (administrative law judge does not err by not including limitation in hypothetical to vocational expert limitation that administrative law judge discredited through reliance on substantial evidence).

## III. DECRETAL

**IT IS, THEREFORE, ORDERED THAT:**

(1) Plaintiff's Motion for Summary Judgment (Doc. 13) is **DENIED**;

(2) Defendant's Motion for Summary Judgment (Doc. 18) is **GRANTED**; and

(3) The decision of the Commissioner is **AFFIRMED**.

Signed: February 21, 2017

Richard L. Voorhees
United States District Judge